IN THE UNITED STATES DISTRICT COURT 
 FOR THE MIDDLE DISTRICT OF ALABAMA 
 NORTHERN DIVISION 

VERONICA JOHNSON, ) 
 ) 
 Plaintiff, ) 
 ) 
 v. ) CASE NO. 2-19-CV-1047-WKW 
 ) [WO] 
TUTERA SENIOR LIVING d/b/a ) 
MONTGOMERY CHILDREN’S ) 
SPECIALTY CENTER, L.L.C., ) 
 ) 
 Defendant. ) 

 MEMORANDUM OPINION AND ORDER 
 On December 13, 2019, Veronica Johnson (“Johnson”), a black woman, filed 
suit against Tutera Senior Living d/b/a Montgomery Children’s Specialty Center, 
L.L.C. (“Tutera”). (Doc. # 1.) In her complaint, Johnson alleges that Tutera 
discriminated against her based on her race in violation of both 42 U.S.C. § 2000e–
2 (“Title VII”) and 42 U.S.C. § 1981. Before the court is Tutera’s Motion to Dismiss 
Plaintiff’s Complaint brought pursuant to Federal Rules of Civil Procedure 12(b)(1) 
and 12(b)(6). (Doc. # 7.) For the reasons given below, the motion to dismiss is due 
to be granted in part and denied in part. 
 I. JURISDICTION AND VENUE 
 Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331 (federal 

question) and 1343 (civil rights). Personal jurisdiction and venue are not contested. 
 II. STANDARD OF REVIEW1 
 When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must 

take the facts alleged in the complaint as true and construe them in the light most 
favorable to the plaintiff. Resnick v. AvMed, Inc., 693 F.3d 1317, 1321–22 (11th 
Cir. 2012). To survive Rule 12(b)(6) scrutiny, “a complaint must contain sufficient 
factual matter, accepted as true, to ‘state a claim to relief that is plausible on its 

face.’” Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. 
Twombly, 550 U.S. 544, 570 (2007)). “[F]acial plausibility” exists “when the 
plaintiff pleads factual content that allows the court to draw the reasonable inference 

that the defendant is liable for the misconduct alleged.” Id. (citation omitted). 

 1 In its motion, Tutera argues that “the Court cannot exercise subject matter jurisdiction 
over Plaintiff’s purported claims of race discrimination because Tutera was not Plaintiff’s 
employer for purposes of Title VII . . . .” (Doc. # 7, at 1.) Despite Tutera’s claims, this court’s 
subject matter jurisdiction is not at issue. Instead, “[Tutera’s] status as [Johnson’s] employer is a 
nonjurisdictional element of her substantive cause[s] of action, and therefore, a Rule 12(b)(1) 
motion to dismiss for lack of subject matter jurisdiction is not the appropriate procedural vehicle 
for presenting this defense.” Kaiser v. Trofholz Techs., Inc., 935 F. Supp. 2d 1286, 1292 (M.D. 
Ala. 2013). This finding is consistent with how other district courts in this circuit have analyzed 
the issue. See Linzy v. Ala. Dep’t of Pub. Health, 2:19-CV-153-MHT, 2020 WL 6205848, at *1 
(M.D. Ala. Oct. 22, 2020) (analyzing the defendant’s argument that it was not the plaintiff’s 
employer under Rule 12(b)(6), not Rule 12(b)(1)); Howell v. City of Lake Butler, 3:17-CV-641-
JRK, 2018 WL 904281, at *3 (M.D. Fla. 2018) (same); see also Arbaugh v. Y & H Corp., 546 U.S. 
500, 516 (2006) (holding that Title VII’s employee numerosity requirement for employer status 
was non-jurisdictional). Accordingly, Tutera’s motion is considered solely under Rule 12(b)(6). 
 The evaluation of a Rule 12(b)(6) motion is “limited to the face of the 
complaint and attachments thereto.” Starship Enters. of Atlanta, Inc. v. Coweta 

Cnty., Ga., 708 F.3d 1243, n.13 (11th Cir. 2013). Accordingly, the court has not 
considered the exhibits attached to either parties’ briefing, and conversion under 
Federal Rule of Civil Procedure 12(d) is not necessary. Harper v. Lawrence Cnty., 

Ala., 592 F.3d 1227, 1232 (11th Cir. 2010) (“A judge need not convert a motion to 
dismiss into a motion for summary judgment as long as he or she does not consider 
matters outside the pleadings.”). 
 III. BACKGROUND2 

 Johnson is a licensed nursing home administrator and claims that she worked 
for Tutera until January 30, 2018—the date of her termination. According to 
Johnson, Billy Clifton and Scott McBridges, managers at Tutera, unlawfully 

discriminated against her based on her race when they terminated her employment 
because she was black. Johnson asserts that Tutera’s stated reason for her 
termination—that she was an unproductive employee—was pretextual. To support 
pretext, Johnson alleges, among other things, that she received pay raises from 

Tutera, a deficiency-free work review in 2016, and various awards for her job 
performance with the company. (Doc. # 1, at 2–3.) Moreover, Johnson identifies 

 2 Applying the Rule 12(b)(6) standard, the court has presumed as true the well-pleaded 
factual allegations in the complaint, but not its legal conclusions. 
two comparators, Heather Penny and Aaron Johnson (both of whom are white), who 
held the same position as she held, and contends that Tutera did not terminate their 

employment even though they “were in fact poor performers.” (Doc. # 1, at 2.) 
Based on these allegations, Johnson claims that “Billy Clifton and/or Scott 
McBridges harbored racial animus against African American professionals.” (Doc. 

# 1, at 3.) 
 On June 11, 2019, the Equal Employment Opportunity Commission 
(“EEOC”) issued a Letter of Determination inviting Johnson and Montgomery 
Children’s Specialty Center to participate in “informal methods of conciliation” after 

“finding that there [was] reason to believe violations . . . occurred.” (Doc. # 1–2, at 
1–2) (alteration added).) On September 18, 2019, after conciliation failed, the EEOC 
issued Johnson a Notice of Right to Sue. (Doc. # 1–1.) Montgomery Children’s 

Specialty Center is the only respondent named in both documents. 
 IV. DISCUSSION 
 Tutera moves to dismiss Johnson’s complaint in its entirety, advancing two 
primary arguments: (1) that it cannot be held liable under either Title VII or § 1981 

because it did not employ Johnson; and (2) Johnson’s Title VII claim against it 
should be dismissed for failure to exhaust administrative remedies. In short, Johnson 
has adequately pleaded an employment relationship between herself and Tutera; 
however, she failed to exhaust her administrative remedies concerning her Title VII 
claim. The following discussion addresses each issue in turn. 

A. Tutera’s Status as Johnson’s Employer 
 Tutera asserts that Johnson “alleges no facts to establish that Tutera was doing 
business as Montgomery Children’s Specialty Center, or even that an employment 

relationship existed between herself and Tutera.” (Doc. # 7, at 4–5.) At this stage 
of the proceedings, Tutera’s argument is unavailing. 
 “A Title VII workplace discrimination claim can only be brought by an 
employee against [her] employer.” Peppers v. Cobb Cnty., Ga., 835 F.3d 1289, 1297 

(11th Cir. 2016) (citations omitted).3 To determine “whether an entity is a qualified 
employer, [courts] ask[] this basic question: ‘who (or which entity) is in control of 
the fundamental aspects of the employment relationship that gave rise to the claim.’” 

Id. (quoting Lyes v. City of Riviera Beach, 166 F.3d 1332, 1345 (11th Cir. 1999) (en 
banc)). This inquiry “requires consideration of the totality of the employment 
relationship.” Id. Moreover, courts weigh two factors in analyzing whether an 
employment relationship existed sufficient to state an employment discrimination 

claim: “(1) how much control the alleged employer exerted on the employee, and 

 3 This analysis applies with equal force to Johnson’s § 1981 employment discrimination 
claim. See Kolczynski v. United Space Alliance, LLC, No. 6:04-CV-716-KRS, 2005 WL 2291706, 
at *5 n.5 (M.D. Fla. 2005) (“Because Section 1981 . . . claims apply the same analysis as . . . Title 
VII claims, an employment relationship must exist) (citing Sledge v. Goodyear Dunlap Tires N. 
Am., Ltd., 275 F.3d 1014, 1015 n.1 (11th Cir. 2001)). 
(2) whether the alleged employer had the power to hire, fire, or modify the terms and 
conditions of the employee’s employment.” Id. (citations omitted). 

 Here, Johnson alleges that Tutera, “by and through its managers,” gave her 
pay raises, performance bonuses, and various work-related awards. (Doc. # 1, at 2–
3.) Johnson further alleges that Tutera terminated her employment with the 

company on January 30, 2018. (Doc. # 1, at 2.) These allegations, which are 
presumed true and construed in the light most favorable to Johnson, are enough to 
establish that Tutera did have sufficient control, authority, and influence over the 
terms of Johnson’s employment. Thus, Johnson has plausibly alleged that Tutera 

was her employer for the purposes of stating a claim under both Title VII and § 1981. 
Of course, this finding does not prevent Tutera from reasserting its argument that it 
does not qualify as Johnson’s employer at the summary judgement stage after the 

parties have had an opportunity to uncover additional facts through discovery. 
B. Johnson’s Failure to Exhaust her Administrative Remedies 
 Tutera persuasively contends that the Title VII claim against it should be 
dismissed because Johnson did not exhaust her administrative remedies. 

Specifically, Tutera argues that Johnson “filed her EEOC Charge only against 
Montgomery Children’s Specialty Center” and “did not name . . . Tutera in her 
Charge, let alone reference Tutera as an entity that played any role in her 

employment.” (Doc. # 7, at 5.) 
 “Generally, only a party named in an EEOC charge can subsequently be 
charged in a lawsuit filed in court under Title VII.” Peppers, 835 F.3d at 1298 

(citation omitted); see also 42 U.S.C. § 2000e-5(f)(1) (“[A] civil action may be 
brought against the respondent named in the [EEOC] charge.”) (alterations added). 
This general rule “serves to notify the charged party of the allegations and allows 

the party an opportunity to participate in conciliation and voluntarily comply with 
the requirements of Title VII.” Peppers, 835 F.3d at 1298. However, “courts 
liberally construe this requirement and, where [Title VII’s] purposes are fulfilled, a 
party not named in an EEOC charge may be subject to federal court jurisdiction.” 

Id. To determine whether Title VII’s purposes are fulfilled, thus avoiding the need 
to name a party in an EEOC charge, courts examine the following factors: 
 (1) the similarity of interest between the named party and the unnamed 
 party; (2) whether the plaintiff could have ascertained the identity of 
 the unnamed party at the time the EEOC charge was filed; (3) whether 
 the unnamed parties received adequate notice of the charges; (4) 
 whether the unnamed parties had an adequate opportunity to participate 
 in the reconciliation process; and (5) whether the unnamed party 
 actually was prejudiced by its exclusion from the EEOC proceedings. 

Id. 
 In the instant case, it is clear from Johnson’s EEOC Notice of Right to Sue 
(Doc. # 1–1) and EEOC Letter of Determination (Doc. # 1–2), both of which are 
attached to the complaint, that Johnson did not name Tutera in her EEOC charge. 
These documents only name Montgomery Children’s Specialty Center as the 
respondent in the proceedings before the agency. Thus, Johnson has failed to 
exhaust her administrative remedies pursuant to the general rule that “only a party 

named in an EEOC charge can subsequently be charged in a lawsuit filed in court 
under Title VII.” Peppers, 835 F.3d at 1298 (citation omitted). 
 Additionally, an examination of Johnson’s complaint reveals that she failed 

to plead any facts establishing that the exception to the exhaustion requirement 
should apply to her case. For example, the complaint is wholly devoid of allegations 
demonstrating a similarity of interest between Tutera and Montgomery Children’s 
Specialty Center; whether Johnson could have identified Tutera at the time she filed 

her EEOC charge; whether Tutera received adequate notice of Johnson’s charges; 
whether Tutera had an adequate opportunity to participate in the reconciliation 
process; and whether Tutera was actually prejudiced by its exclusion from the EEOC 

proceedings. Absent such allegations, Johnson has failed to plausibly show that the 
purposes of Title VII have been fulfilled. See Tuck v. Off Shore Island Marine & 
Oilfield Co., No. 12-0379-WS-M, 2013 WL 81135, at *3 (S.D. Ala. Jan. 4, 2013) 
(granting the defendant’s motion to dismiss because the plaintiffs failed to exhaust 

administrative remedies as it related to naming the defendant in their EEOC charge); 
McAllister v. Price Rite, Inc., No. 3:09-CV-1888-VLB, 2012 WL 696125, at *3 (D. 
Conn. Mar. 1, 2012) (same). Accordingly, Johnson’s Title VII claim against Tutera 
is due to be dismissed without prejudice for failure to exhaust administrative 
remedies. 

 V. CONCLUSION 
 Based on the foregoing, it is ORDERED as follows: 
 (1) Tutera’s motion to dismiss (Doc. # 7) is DENIED as it relates to Johnson’s 

§ 1981 claim because Johnson has adequately pleaded an employment relationship 
with Tutera. 
 (2) Tutera’s motion to dismiss (Doc. # 7) is GRANTED as it relates to 
Johnson’s Title VII claim because she failed to exhaust her administrative remedies, 

and this claim is dismissed without prejudice. 
 (3) Johnson is GRANTED leave to file an amended complaint on or before 
December 7, 2020. The amended complaint should contain allegations, to the extent 

they exist, demonstrating that the purposes of Title VII have been fulfilled despite 
Johnson not naming Tutera in her EEOC charge. 
 DONE this 23rd day of November, 2020. 
 /s/ W. Keith Watkins 
 UNITED STATES DISTRICT JUDGE